UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

FRED NEKOUEE, individually,                    :
                                               :
              Plaintiff,                       :
                                               :
vs.                                            :   Case No. 2:19-cv-02436
                                               :
CPLG PROPERTIES L.L.C., a Delaware limited :
liability company,                             :
                                               :
              Defendant.                       :
_____/:

**<u>COMPLAINT</u>**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, CPLG PROPERTIES L.L.C., a Delaware limited liability company, (sometimes

referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation

expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 <u>et</u> <u>seq.</u>

("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the

County of Hillsborough.

2.      Defendant CPLG PROPERTIES L.L.C.'s property, the La Quinta Inn, is located at

9461 Lenexa Drive, Lenexa, Kansas 66215, in Johnson County ("La Quinta Inn").

3.      Venue is proper in the District of Kansas, Kansas City Division because the situs

of the property lies in this judicial district.  The Defendant's property is located in and does

business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   *See also* 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation, the La Quinta Inn, as defined by the ADA, 42 U.S.C. §12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Defendants are responsible for complying with the obligations of the ADA.

7.      The place of public accommodation that the Defendant CPLG PROPERTIES L.L.C. owns, operates, leases or leases to is the La Quinta Inn.

8.       La Quinta Inn is a place of public accommodation.

9.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.     Mr. Nekouee travels to the Kansas City area every three to six months to accompany his brother at heavy equipment auctions, or to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to visit his uncle or cousin who live in such area.

11.     Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the La Quinta Inn which forms the basis of this lawsuit on January 31, 2019 (check in) and February 1, 2019 (checkout), and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to and convenient to get to the heavy equipment auction and dealerships, and to his uncle and cousin he visits in the Kansas City

area.

12.     He also visited the Kansas City area in March 2018, and February 2019, and May 2019 and he has plans to return to the Kansas City area in late September or early October of 2019.

13.     The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the La Quinta Inn.

14.     For the reasons set forth in paragraphs 9-13 and 25, Mr. Nekouee plans to return to the La Quinta Inn, but he is deterred from visiting it again until the barriers to access are removed.

15.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability or those accompanying him to park a vehicle due to a lack of signage, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the restrooms in the La Quinta Inn, and have impaired his access to the goods and services at the La Quinta Inn.

16.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

17.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

18.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

19.     The cross slope of the walking surface outside of the La Quinta Inn and near its lobby entrance is steeper than 1:48.

20.     On his visit to the La Quinta Inn, the Plaintiff encountered changes in elevation, excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

21.     The Plaintiff encountered barriers to access in the restroom in the lobby and in the accessible guest restroom, room 126.

22.     The Plaintiff is deterred from visiting the La Quinta Inn even though he enjoys its goods and services, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     The Plaintiff is deterred from visiting the places of public accommodation in the La Quinta Inn, even though the inn is close to the heavy equipment auction, heavy equipment dealerships, and the home of his uncle and cousin in the Kansas City area because of the difficulties he will experience there in the parking lot, access aisles, ramps, walking surfaces (sidewalks), guest room, restrooms, breakfast area, and pool area until the property is made accessible to him in a wheelchair.

24.      Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 30 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

25.     Fred Nekouee desires to visit the La Quinta Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

26.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

27.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

28.     Preliminary inspections of the La Quinta Inn have shown that violations exist.

29.     Physical conditions that exist at the La Quinta Inn are accurately described in each romanette (i) of each lettered subparagraph in paragraph 30 of this Complaint.

30.     The violations that Fred Nekouee personally encountered or observed on his visit to the La Quinta Inn include, but are not limited to:

**PARKING AREA**

a. (i) In the parking lot, the parking spaces for disabled patrons shown in the photograph below do not have the signage and international symbol of accessibility.   (ii) This lack of signage with the international symbol of accessibility for these parking spaces is in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iii) Due to this lack of signage, the Plaintiff had difficulty finding an accessible parking space, and this lack of signage deters him from staying at the La Quinta Inn.   (iv) The action required to provide signage is easily accomplishable and able to be carried out without much difficulty or expense.



b.    (i) In the parking lot, there are no signs with the words "van accessible" on them.
(ii) In the parking lot, there are no signs identifying van parking spaces with the designation
"van accessible," in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii)
The Plaintiff observed this lack of van accessible signage, and it deters him from visiting
La Quinta.   (iv) The action required to install signage with the designation "van
accessible" is easily accomplishable and able to be carried out without much difficulty or
expense.

c.    (i) In the parking lot, the parking space shown in the photograph below has a
running slope steeper than 1:48.   (ii) This parking space for disabled patrons has a running
slope steeper than the maximum allowed slope of 1:48, in violation of Federal Law 2010,
ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope in this parking space
and it made his wheelchair unstable.   (iv) The action required to reduce the running slope
of this parking space is easily accomplishable and able to be carried out without much

difficulty or expense.



d.    (i) In the parking lot, the running slope of the front section (closer to the building) of the access aisle shown in the photograph in subparagraph (c) above is steeper than 1:48. (ii) The running slope of the front section (closer to the building) of this access aisle is steeper than the maximum allowed slope of 1:48, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this running slope in this access aisle and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

e.    (i) The cross slope of the walking surface outside of the La Quinta Inn and near its lobby entrance is steeper than 1:48.   (ii) The cross slope of this walking surface is steeper than the maximum allowed slope of 1:48, in violation of Federal Law 2010, ADAAG §

403.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this cross slope of this walking surface, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY ENTRANCE DOOR**

f.      (i) The force needed to open the main entrance door to the lobby is greater than 5 pounds of force.   (ii) The force needed to open this main entrance door is about 10 pounds and exceeds the maximum allowed force of 5 pounds (22.2N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   (iii)   Due to the force necessary to open this main entrance door, the Plaintiff required assistance to open this door and to enter the hotel.   (iv) The action required to reduce the force necessary to fully open this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY**

g.      (i) The snack and soda vending machines in the lobby have card readers that are higher than 48 inches above the floor.   (ii) The card readers to these snack and vending machines are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of these card readers above the floor, from his wheelchair, the Plaintiff could not reach these card readers to obtain a snack or soda.   (iv) The action required to replace or to lower the legs of these vending machines so that the card readers are accessible to an individual in a wheelchair is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN THE LOBBY**

h.   (i) In the restroom in the lobby, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 44 inches from the rear wall and does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to its lack of proper extension from the rear wall, the Plaintiff had great difficulty using this side wall grab bar to transfer himself from his wheelchair to sit on the toilet and from the toilet back to his wheelchair.   (iv) The action required to replace and properly position this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) In the restroom in the lobby, the top gripping surfaces of the grab bars are all higher than 36 inches above the floor.   (ii) The top gripping surfaces of these grab bars are all higher than 36 inches (915 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of the top gripping surfaces of these grab bars above the floor, the Plaintiff had difficulty using these grab bars to help transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate these grab bars is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) In the restroom in the lobby, under the sink, the knee clearance depth at 9 inches above the floor is less than 11 inches deep.   (ii) Under this sink, the knee clearance depth at 9 inches above the finish floor is less than a minimum of 11 inches deep, in violation of Federal Law 2010, ADAAG § 306.3.3.   (iii) The Plaintiff encountered this lack of knee clearance depth under this sink, and it made it difficult for him to use this sink.   (iv) The action required to replace this sink is easily accomplishable and able to be carried out

without much difficulty or expense.

k.    (i) In the restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 inches and 9 inches from the front of the toilet or water closet.   (ii) This toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate or replace this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

l.    (i) In the lobby restroom, the operation of the door knob and lock require tight grasping, pinching or twisting of the wrist.   (ii) The operation of this door knob and lock require tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door knob or lock with a closed fist or loose grip.   (iv) The action required to replace this door knob and lock are easily accomplishable and able to be carried out without much difficulty or expense.

m.    (i) In the restroom in the lobby, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is about 65.5 inches above the finish floor and higher than 48 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting La Quinta Inn.   (iv) The action required to relocate this coat hook is easily accomplishable and able  to be carried out without much difficulty or expense.

n.    (i) In the lobby restroom, the liquid soap dispenser is mounted higher than 48 inches

above the floor.   (ii) This liquid soap dispenser mounted at about 57 inches above the finish floor and higher than 48 inches (1220 mm) above the finish floor, in violation of Federal Law 2010, ADAAG §§ 308.2.2, 309.3, and 606.1.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

o.   (i)   In the breakfast area, the soda machine dispenser buttons are higher than 48 inches above the floor.   (ii) These soda machine dispenser buttons are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not operate these buttons from his wheelchair.   (iv) The action required to relocate this soda machine is easily accomplishable and able to be carried out without much difficult or expense.

p.   (i) In the breakfast area, the pancake cups are higher than 48 inches above the floor.   (ii) These pancake cups are higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not reach these pancake cups from his wheelchair.   (iv) The action required to relocate these cups is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In he breakfast area, the plates are higher than 44 inches above the floor.   (ii) These plates are higher than 44 inches above the finish floor where the reach depth is greater than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not reach these plates from his wheelchair. (iv) The action required to relocate these plates is easily accomplishable and able to be

carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 126**

r.     (i) In accessible guestroom 126, the security latch for the entrance door is higher than 48 inches above the floor.   (ii) The security latch for this entrance door is about 60 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 404.2.7.   (iii) Due to its height above the floor, the Plaintiff could not operate this security latch from his wheelchair.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficult or expense.

s.     (i) In accessible guestroom 126, the door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches.   (ii) The door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than 60 inches as it is blocked by the mini-fridge, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of door pull side maneuvering clearance, the Plaintiff required assistance to maneuver his wheelchair to exit the room.   (iv) The action required to relocate the mini-fridge is easily accomplishable and able to be carried out without much difficulty or expense.

t.     (i) In guestroom 126, the time for the entrance door to close from an position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for this entrance door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the closing time of this door, the Plaintiff's wheelchair was hit by the door before he could move into the room.   (iv) The action required to adjust the door closer on this door is easily

accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In guestroom 126, the low end of the curtain rod pull is higher than 48 inches above the floor.   (ii) The low end of this curtain rod pull is about 56 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this curtain rod pull from his wheelchair to open and close the curtains.   (iv) The action required to replace or to extend this curtain rod pull is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In guestroom 126, the operation of the switch for the nightstand lamp requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the switch for this nightstand lamp requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this switch for the nightstand lamp with a closed fist or loose grip.   (iv) The action required to replace this switch or lamp is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In guestroom 126, the operation of the switch for the wall-mounted lights between the beds requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the switch for these lights requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this switch for the nightstand lamp with a closed fist or loose grip.   (iv) The action required to replace these switches or lights is easily accomplishable and able to be carried out without much difficulty or expense.

x.    (i) In guestroom 126, the operation of the switch for the desk light requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the switch for this desk light requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this switch for the desk light with a closed fist or loose grip.   (iv) The action required to replace this switch or light is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In accessible guestroom 126, the holder for the clothes iron is higher than 48 inches above the floor.   (ii) This holder for the clothes iron is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to the height of this holder for the clothes iron above the floor, from his wheelchair, the Plaintiff could not reach this iron.   (iv)   The action required to relocate this holder for the clothes iron is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 126**

z.    (i) In accessible guestroom 126, the door of the restroom has a pull side maneuvering clearance perpendicular to the doorway of less than 48 inches.   (ii) The door of this restroom has a pull side maneuvering clearance perpendicular to the doorway of about 36 inches and less than 48 inches since the maneuvering clearance space is blocked by a bed, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of maneuvering clearance space, the Plaintiff required assistance to enter this restroom.   (iv) The action required to relocate the bed is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the restroom in guestroom 126, the fixed shower head is higher than 48

inches above the shower floor.   (ii) This shower head shown in the photograph below is fixed and is higher than 48 inches above the shower floor, in violation of Federal Law 2010, ADAAG §§ 308.2, 608.6 and 607.6.   (iii) Due to this shower head being fixed and higher than 48 inches above the shower floor, the Plaintiff required assistance to bathe. (iv) The action required to install a movable shower head with a hose is easily accomplishable and able to be carried out without much difficulty or expense.



bb.   (i)   In the restroom in guestroom 126, the top of the gripping surface of the lower grab bar on the back wall of the bathtub is less than 8 inches above the rim of the bathtub. (ii) This lower grab bar on the back wall of the bathtub is not located between 8 inches minimum and 10 inches maximum above the rim of the bathtub, in violation of Federal Law 2010, ADAAG § 607.4.1.1.   (iii)   Due to the location of this back wall grab bar, the

Plaintiff had difficulty transferring himself to and from the bathtub and positioning himself while using the bathtub.   (iv) The action required to relocate this grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom in guestroom 126, neither a permanent seat at the head end of the bathtub nor a removable in-tub seat is provided.   (ii) Neither a permanent seat at the head end of the bathtub nor a removable in-tub seat is provided, in violation of Federal Law 2010, ADAAG §§ 607.3 and 610.2.   (iii) Due to the lack of a seat in or for this bathtub, the Plaintiff required assistance to bathe.   (iv) The action required to provide a seat for the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the restroom in guestroom 126, the distance from the end of the grab bars on the back wall of the bathtub from the wall with the water controls is more than 12 inches. (ii) The ends of the grab bars on the back wall of the bathtub are more than 12 inches from the control end wall, in violation of Federal Law 2010, ADAAG § 607.4.2.1.   (iii) Due to the location of these grab bars, the Plaintiff had difficulty using the bathtub.   (iv) The action required to relocate these back wall grab bars is easily accomplishable and able to be carried out without much difficulty or expense.

ee. (i) In the restroom in accessible guestroom 126, the water controls and shower spray controls are not located between the centerline of the width of the bathtub and the open side of the bathtub.   (ii) The controls for this bathtub are not located between the open side of the bathtub and the centerline of the width of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   (iii) Due to the location of these controls, the Plaintiff could not adjust the water from his wheelchair outside of the bathtub.

(iv) The action required to relocate these controls is easily accomplishable and able to be carried out without much difficulty or expense.

ff.    (i) In the restroom in accessible guestroom 126, the centerline of the toilet paper dispenser is not between 7 inches and 9 inches from the front of the toilet.  (ii) The centerline of this toilet paper dispenser is not between the minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to its location, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.  (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

gg.  (i) In the restroom in guestroom 126, the side wall grab bar near the toilet extends less than 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 47 inches from the rear wall and does not extend a minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to this lack of extension from the rear wall of this side wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the restroom in guestroom 126, the space between the top of the rear wall grab bar and the bottom of the wall-mounted hair dryer above it is less than 12 inches.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 609.3.   (iii) The location of this hair dryer made it difficult for the Plaintiff to use this rear wall grab bar.  (iv) The action required to relocate this hair dryer is easily accomplishable and able to be carried

out without much difficulty or expense.

**POOL AREA**

ii.    (i) The pool does not have signage with the international symbol of accessibility. (ii) The pool area does not have signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   (iii) The Plaintiff observed this lack of signage, and it deters him from staying at the La Quinta Inn.   (iv) The action required to install signage with the international symbol of accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

**HALLWAY**

jj.    (i) The hallway shown in the photograph below has a running slope that is steeper than 1:12.   (ii) This hallway has a running slope steeper than the maximum allowed slope for a ramp run of 1:12, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep running slope and he required assistance to keep his wheelchair from running away down this hallway and to ascend this ramp run in this hallway.   (iv) The action required to reduce the slope of this hallway is easily accomplishable and able to be carried out without much difficulty or expense.



31.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

32.     The discriminatory violations described in paragraph 30 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

33.      The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.

34.      The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as

requested herein.

35.     Defendant has discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

36.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

37.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

38.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

39.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

40.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the La Quinta Inn, adjacent parking lot spaces, and walking surfaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

41.   Millions of Americans require the use of a wheelchair for mobility.

42.   The number of wheelchair users increases in the United States every year due in part to the aging of the baby boomer generation.

43.   At some point, every family embraces disability.

44.   Removing existing architectural barriers to access under Title III of the ADA will be good for business at the La Quinta Inn.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

### <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Kansas City, Kansas as the place of trial for this action.

Respectfully submitted,

<u>s/Robert J. Vincze</u>
Robert J. Vincze (KS #14101)
Law Offices of Robert J. Vincze
PO Box 792, Andover, Kansas 67002
Phone: 303-204-8207
Email: <u>vinczelaw@att.net</u>

*Attorney for Plaintiff Fred Nekouee*